All rise. The Illinois Appellate Court Fifth Division is now in session. The Honorable Justice Mary L. Raper is presiding. Please have a seat. Would the clerk please call the first case. 1220499, Heeple v. Gariboy. Good morning. Before you start, just to tell you a couple of things. First, keep your voice up. This microphone records, but it does not amplify. And we have a full courtroom of people. All of them want to hear you. Second of all, we allot 20 minutes aside, plus an additional five minutes for the appellant. You do not need to reserve it. It is yours. You also don't need to use it all, but you are welcome to it. And with that, would the appellant please begin. Good morning, Your Honors. My name is Pamela Rubio. I'm with the Office of the State Appellate Defender, and I represent Daryl Lloyd. At this time, I'd like to reserve just a few minutes for rebuttal. You have five without reserving it. So you have that 20, and you still have five. All right, thank you. You may begin. May it please the Court. Two types of improper evidence were erroneously admitted at Daryl Lloyd's jury trial that were both highly prejudicial and heavily relied upon by the State in seeking Lloyd's conviction. First, other crimes' evidence was admitted about two unrelated and unconnected crimes that occurred after the charged crimes. And second, a victim-sensitive interview was entered into evidence and played for the jury that was irrelevant under Rule 402, prejudicial under Rule 403, and inadmissible hearsay under Section 115-10. Because the record does not overcome the presumption that the jury relied on only admissible evidence, the State cannot meet its burden of showing there was no reasonable probability that the improperly admitted evidence affected Lloyd's conviction. Turning to the first issue that you mentioned. Just to clarify, is there or is there not a third issue that if the other crime's evidence was improperly admitted, or in addition to being improperly admitted, it was improperly used in closing to add to the credibility of certain witnesses? Is that a separate argument, or what is that in your view? That wasn't raised as a separate prosecutorial misconduct argument. That standing alone was the one point of the prosecutorial, the closing argument that we highlighted to show that the introduction of the other crime's evidence was highly prejudicial. Not that it was improperly used, but it was just prejudicial, but look how prejudicial it was. We are contending that it was improperly used, but we didn't raise that as a standalone prosecutorial misconduct issue. But turning to the admission of the other crime's evidence, the whole point of the common law rule prohibiting propensity evidence is to ensure that a jury decides a defendant's guilt based on evidence directly related to the crime's charge. Here the State can't prove that such assurance existed where nearly half of its case against Lloyd consisted of evidence relating to an armed robbery and carjacking that both occurred after the charged crimes and were not connected in any way to the incident at hand. Whether there's a valid basis for the admission of other crime's evidence is assessed in a three-part analysis. The first question this Court should decide is whether the evidence is relevant. The second question is how the evidence advances the stated purpose. And the third question is whether a danger of unfair prejudice is substantially outweighed by its probative value or vice versa. In this case, neither of the other crimes meet the definition of relevancy under Rule 401 because neither make any fact relating to the shootings more or less probable without relying on a propensity inference. So the State's theory in this case was that Mr. Lloyd along with his friends were on a crime spree over a period of under 24 hours in which they committed multiple crimes. As one of them said, they wanted to do a stang which was defined as a robbery and then they stole property and they sold it for cash. So why isn't that a proper basis, a non-propensity basis? Well, cases that refer to a common scheme or design usually refer to a criminal scheme in which the crime charge is only a part of a series of crimes that's part of a larger criminal scheme. And here, the only evidence that the State presented to show that this group of men agreed to participate in anything or planned anything was the sting, which was breaking into a person's home who they knew for a specific target, the TV. And then after that was accomplished, that was the end of the common criminal scheme. They got into their cars, drove around randomly in the neighborhood up and down for an hour and a half before they just happened upon someone walking through a field and decided to rob him. They didn't know who he was. The type of taking was different. They didn't murder him or shoot him, whereas the previous victims, they went in and shot the victims. Then they got back in the car. They drove to a different area. They drove out of Harvey into Englewood. They slept. They ate. They watched the news in the morning. They got back in their car. They drove back down to Harvey, and that's where they just... That's the carjacking, right? That's the carjacking, yes. And they bought property, another TV, which they sold for cash, right? No, there was only one TV in this case. I don't know. You're saying it's the big screen TV from Cornell's apartment? Yes. Wasn't there another TV in the car that they carjacked from the gas station? No. I think there was some evidence. Or is it not clear? It's unclear, but I think that the gist was that the TV had fallen out of the trunk of the car, and they put it back in, and then they were moving some things around. So there was only one TV. I read in the record that the TV was found in the car that they carjacked. I don't remember where the TV was found. It wouldn't make sense that it was the big screen TV from Cornell's apartment. Well, they were moving things in and out of both of the cars. They were taking bags of clothing out of the trunk. They were moving attire. They were making room. They were just moving things around. There's no evidence that any TV was taken other than a single TV from Cornell's apartment. Put aside the TV. The wheels, right? They sold the wheels for $1,000. Right, but when Crockett testified, he said that the only reason they took that car was because he liked it. And even the state argued in closing that they took that car because he wanted it. He didn't testify that they sold it in order to strip it and sell it for money. They're doing random. Well, maybe he liked it because he saw substantial reasonable value for its parts. Well, it's the state's burden to show that this evidence was admissible for its purported purpose other than propensity. And the state didn't provide any evidence of that nature. There were two witnesses, accomplice witnesses, who testified and neither testified about the men engaging in any kind of common plan to rob people for a specific purpose. Putting aside the TVs and putting aside the amount of planning that may have gone into this narrative, this continuing course of conduct, it was, in fact, a continuing course of conduct involving the same people and a lot of crimes, or at least three crimes, correct? That's what it was. They stayed together. They did one crime. They stayed together. They did another crime, and they stayed together, and they did a third crime, and it all was part of the same narrative, was it not? It was not part of the same narrative because it would, the continuing narrative exception, they must occur, they have to occur for the same reason. Where is that required? In Atkins, in Lincoln, they say that a continuing narrative exception does not apply if the crimes were conducted, were undertaken for different reasons at different places and at separate times. And so, again, we go back to the second question, which is how. How are we using this evidence to prove continuing narrative or common design without relying on propensity? How does this show propensity? Let's start there. What is the propensity evidence? How does it show that your client was inclined to engage in crime other than he stayed with these three guys who continued to do crime after crime after crime together? I would say that that's exactly the point. So just because a group of guys decide to commit crimes together, that means that you're relying on their propensity to commit crimes. Without a connecting factor, connecting these crimes together, for example, murdering a witness to the original crime or stealing a getaway car, none of that occurred here. You're saying they have to be tied by motive. They have to be tied by one of the reasons. Any of the reasons that the state provided in this case all go back to propensity. How are we proving that this showed a common design? Simply just by saying that these guys committed crimes together. That's the definition of propensity. It's not just that, right? Because the state had a theory, and the evidence, and one of the fellows said, you know, we want to find another staying, which he defined as some way of making money. And they are then prompted to go to Cornell's apartment where they know there's a big screen TV. And then they jump a guy walking through the field, take his wallet, take his cash. Then they carjack the car at a gas station in Harvey. They sell the TV. They sell the radio. They sell the rims. So why isn't that enough to establish this continuing narrative or course of conduct that the state, you know, theorized? Well, I think that we're talking about taking, right? Taking is always for monetary value in some manner, right? So if we... Taking is too general. It's too general, yes. And the crimes are not connected to one another. Or what if it's to quickly turn around and sell what they stole for money? Is that too general to you? Yes, it's too general. It has to be like a larger criminal scheme. So, for example, if they broke into the apartment building and broke into three apartments in a row and murdered all the occupants, that, I would say, would be a common criminal scheme. Or, for example, in Serta, there was an illegal... Does it matter that it's the same group of participants using the same vehicle, the same gun? No, it doesn't matter. It just... It doesn't matter. That just connects them together, but the state can do that without relying on other crimes evidence. They can present evidence that they were driving around. They can present evidence that they were caught on video at the liquor store. They can do all those things without relying on prejudicial other crimes evidence. Using your hypothetical, they break into three apartments and two apartments, there's no one present, so no one gets killed. But a third apartment, there's someone present and the person is killed. So, are you saying that those are not, would not be sufficient to, or would be sufficient to establish a propensity? I think, again, it would have to rely on what the state presented in that case. If the state presented evidence that those offenders had a common plan to go in and rob a series of apartment buildings, I mean, I would probably still be arguing that it's inadmissible, but I can say that I think that it would be harder for this court to find that the other crimes evidence wasn't admitted for a propensity purpose in that situation. But here, we don't, the only agreement that we have here is that the first stay, the only one they agreed to do together was the stay. Oh, the only one they planned? The only one they planned, sure. Okay. But the unplanned acts, the random robberies don't connect in any way to the planned one. But couldn't the jury reasonably infer that, you know, they planned these other acts, too? They're driving around, they come upon a fellow, actually, they're driving around, they see a woman, and they make a U-turn. By the time they get back, she's gone. But then they see this guy walking through a field, perhaps he was drunk, and they rob him, right? And then they carjack somebody at the gas station. Are you saying all these things were not planned, that a reasonable jury could not infer that they were planned, that they just happened sort of organically? Yeah, that's what I'm saying. There's no evidence to show that, in fact, the evidence shows that they're just randomly driving around. And the fact that one of them said at the beginning of all this that we're going to commit a sting, you know, find another sting. But that was over once they committed the crime that they had decided to commit. So the compressed time frame that we're operating under, you're saying is of no moment? No, I'm not saying that. I'm just saying that even if it had been a day and a half, like it is, total, there still needs to be a connecting factor. It was less than 24 hours, right? Right. And that included a few hours of sleep, apparently. Right, right. So which goes to show that these were not connected. There's no evidence that they went out the next morning and were on the hunt to obtain money in order to, I don't know, change their identities or flee the state or any of that. They're just driving around. They go back into the area where the murders occurred, so they're not trying to conceal themselves. They take a car from a gas station, which presumably, you know, I think most people would know that they might be on videotape. They're implicating themselves even more in the murders by just being around. They're not trying to conceal themselves. There's no fact that connects this to the murders in any way. Let me ask you a slightly different question. Let's say we agree with you that murder, not a specific intent crime, don't need to prove intent, so the jury was improperly advised that that was one of the reasons that they could consider that. But we disagree with you that there aren't other reasons. Does that matter? If the jury was instructed that you consider it for all these reasons but only some of them are something, are ones we agree, does that matter? I don't believe the case law says that it matters. As long as there is a basis. Correct. Right, which is why I didn't argue that. You haven't argued that. No, we haven't argued that. But our contention is that it's not admissible for any of the cases. I understand. But that's important as well, you would agree, that you have to show that there is no basis other than propensity on which this could be. It's my burden to prove that the trial court abused its discretion. You don't have to prove anything. It's the state's burden to show that the error was harmless. And it's also the state's evidentiary burden to present evidence showing that these bases applied without relying on propensity. At least one of these bases. At least one of these bases applied without relying on propensity, and that's the big factor here. And the newest case, People v. Smart, out of the Illinois Supreme Court, actually supports our argument because that case shows that in that case the court said that the evidence about the prior act, which was only I think a week and a half prior to the charged crime, might have reached that first question of that it was relevant for a purpose. But the second question, the how, how is it relevant, that's where the court found the error because it said the only reason why you can find that the prior act showed intent for the current act is to rely on a propensity basis. And that's exactly what's happening here. The only way that the crimes that occurred after the charged crimes would show that there was intent or motive or common design or any of those things for the original charged crime is to rely on propensity, basically to say that these men just commit crimes together. And that's not enough. That doesn't open the door to this prejudicial evidence. You don't have much time left, but give you time to address the VSI issue. Sure. If there's any hesitation by the jury in finding Mr. Lloyd guilty, it was likely dissipated by the heart-wrenching VSI interview video that was not admissible because it was not relevant and any probative value was outweighed by its prejudicial effect and it did not meet the requirements of Section 115-10. It did not make any fact and controversy any more or less probable. Nathaniel testified at trial at the age of 13 in 2019 that three people broke into his home and shot his family and himself. He didn't identify anybody in court and no evidence was presented that he identified anyone in a photo array or lineup. Then the VSI was admitted. He was five and a half years old at the time. It was taken a year and a half after the crime. There were huge inconsistencies in the video. He said in the video that eight or nine people had broken in and the police tried to rehabilitate that statement several times and the officer himself admitted that there was quite a bit of inconsistency throughout the interview. At times the officer admitted that Nathaniel would not answer questions. He would change the subject. They had to redirect him back and the officer also assumed that he was emotionally available for this interview but no evidence, and again it's the state's burden, no evidence was presented that he was emotionally ready. He didn't testify at the 115-10 hearing. So nothing in this video made anything more or less probable. It wasn't necessary. Nathaniel testified and his testimony was just as it was. There was no need to introduce this evidence. And given the lack of probative value of this, it's clear that the only real reason the state introduced the VSI was to tug at the jury's heartstrings. The state itself said in closing argument that the video was played to show how young Nathaniel was which is not a fact in controversy. It's not relevant. His age and what he looked like actually a year and a half after the crime is not indicative of anyone's guilt or innocence. And again, the three prompt tests for 115-10 were not met. None of the three prompts. The court should look at the time, the circumstances, and the content. Aside from the number of offenders that entered the apartment, which obviously there was a discrepancy there, what's the other major discrepancies? He also said in the video that the police came in and shot them and arrested them and took them away and took them to jail. And we know that that's not true. He also said something about a door being broken and they weren't able to fix it. It was a bathroom door, right? It might have been the bathroom. One of the victims was showering at the time. Right, but then he goes on to say, I think that there is one photo of a broken bathroom door. But then I think that his video statement alluded to them breaking the door in or breaking it when they were leaving. But he goes on to say that they weren't able to fix it. He doesn't know that. I mean, there's no way that that could be accurate because he was immediately taken to the hospital and in the hospital for a week. So how would he know about whether or not they could repair the door? So there were all these little details that he put in his VSI that just goes to show that the content of it was not helpful in any way to this case. But again, it was highly prejudicial, even if you find it relevant. Because it just is, if you've watched it, it's just heart-wrenching. And there's no way that it didn't impact the jury. Any questions? Thank you very much. Thank you. And we'll see you for a moment. May it please the Court and counsel, Rita Stotz from the State's Attorney's Office for the People. I know you can talk louder. Okay, I will. I'll start with the other crimes evidence issue. So we have all of the theories of admissibility outlined in our brief reply here, and they overlap to a degree. But I'm just going to focus on one, which is that the carjacking and the robbery of Jackson were admissible to show the intent necessary for accountability. So a defendant was charged with felony murder, predicated on armed robbery at Cornell's apartment, which meant he was on the hook for the murders if he was an accomplice to the armed robbery. To show accomplice liability, we had to show he aided or abetted the robbery with the intention of promoting or facilitating that offense. So as to the first armed robbery of Jackson, the fact that defendant rode along. So just to be clear, you're saying that the evidence of Jackson's robbery was to establish his participation as an accomplice? That's one of the theories. In the murders. In the murders in the original armed robbery. Correct. And is that related to intent as well? Yes. Accountability requires a showing of an intent to promote or facilitate the offense. So whenever there's an accountability offense, the State always has to prove intent, and that's one of the theories that worked here. So he rides along during that second armed robbery, and he gets proceeds even though he doesn't participate. That shows he's part of the group. They have this agreement to work together to commit these acts. Is there evidence that he's in the car at the time? Yes. And there's evidence that he's passed out the license of the robbery victim, and he's found with it when he's arrested. The same is true of his involvement in the carjacking of Witherspoon. It was another theft-type crime. Same robbery crew. Same car. Same gun. Same general area. Same 24-hour period. So this shows that the crew is working together. The defendant was guilty of the murders and attempted murder on an accountability theory because he was also involved in that earlier robbery. Now, there's a thread through defendant's arguments that the question is somehow, are the later armed robbery and carjacking similar to the shooting? And that is the wrong question because the defendant is on the hook for the shooting if he was on the hook for the underlying armed robbery. So for accountability gets him liability for the murders and attempted murder, and there was also a felony murder theory, so he was on the hook for the murders if he was involved in the underlying armed robbery. Isn't there direct evidence that this whole thing was his idea? Yes. So why did you have some need to prove intent? Well, we don't know what the jury is going to believe, but yes. He argued that he stayed in the car and that, you know, maybe if he did go in, maybe we don't know why he went in. Maybe he didn't have bad intentions because Cornell was his friend. I'm sorry. I guess what I'm saying is I don't see the connection necessarily between these later crimes and his intent to commit the armed robbery and the murders that are the underlying crime. So later he decided he was driving around with these. I mean, I don't see that showing intent. I guess explain to me, if you could, why that shows that he intended this earlier crime just to happen. It shows he's engaged in a common criminal design to commit theft-type offenses. Common design is one way of proving intent for accountability. So these guys are going out. So is this common design to do the carjacking and the later robbery, and you're saying that common design also included the earlier robbery. So then why doesn't he go back to what we were asking your opposing counsel to? It's all one big crime spree that they're in together, and it's not even other crimes evidence. This is the spree, guys. This is the spree, jury. They're all in it together. And I think the Supreme Court has said you don't even have to do another crimes analysis because it's not extrinsic. It's intrinsic to the whole, as you would say, common design, right? That's true as well. We've tried to brief every possible theory just to cover the basis. But, yes, it is an ongoing crime spree, a continuing crime spree, a continuing narrative. A continuing common design. A continuing common design. However, counsel argues that the initial crime stopped, I guess, when they went home, you know, went to sleep, went their separate ways, and came back the next day. So how is that continuous? Well, the robbery was before they went to bed that night. So they needed the money to get back to Vincent Gordon's apartment in Chicago. And, no, it was a tight time frame. This was all in 24 hours. They did stop to sleep. But 24 – there's certainly – What day is the carjacking? Is that the last crime? Yes, the carjacking was last. What time of day is that? I believe it was sometime in the morning of the second day. Before noon? Yes. So it is within 24 hours. So about the question about how far apart these are, McKibbin's – It sounds like it's 18 hours. What time did they break into Cornell's apartment? I want to say 10 or 11 o'clock. At night? Yes. So it's less than 18 hours. That sounds right. Yes, Your Honor. McKibbin's is helpful here. That's an Illinois Supreme Court case from 1983. And there the offenses were even farther apart. McKibbin's gets charged with a robbery and the murder of a parking lot attendant. He gets arrested two whole days later, so longer apart than this case. While he's committing another robbery with two other men, one of those guys has the parking lot attendant's property on him. And just as in this case, McKibbin says, Oh, I stayed in the car while the other two guys went in to rob and murder this guy. Much like defendant argued here. And the Illinois Supreme Court said, No. Your involvement in that second armed robbery is admissible to show your criminal intent in the first armed robbery. So this is on all fours with McKibbin's. Right down to defendant's saying that he stayed in the car. And an even tighter time frame of 24 hours. There's also been an argument that intent might not be at issue here. And I just want to point out, I think I already mentioned intent is always at issue in every accountability case. It's an element we have to prove. That's whether we prove shared intent or common design. Because those are just alternative methods of proving intent. The Illinois Supreme Court has explained that. And our evidence showed accountability under either theory here. And you don't have to pick a theory. But either way, intent is always at issue when accountability is at issue. And then intent was also at issue here because of arguments defendant made in his closing. About, you know, I stayed in the car. Or even if I went in, you don't know why I went in. I was a friend of this guy. Well, so that point you made in your brief about the defendant putting at issue his intent, I'm not so sure I'm agreeing with you there. Because there was no indication prior to that, either an opening statement or any evidence in which he was disputing intent. So, you know, I don't see how he can sort of backdoor in the other crimes on the basis that it's going to intent. Because there's a statement which arguably is disputing intent in closing argument. I mean, the timing of it is troubling me. Because if you look at all the cases, you know, there was evidence. Or there was something that said an opening argument, which then opened the door for the state to offer other crimes evidence to establish that the defendant had the intent. So explain that to me. I think it was likely, it was expected that he would make this type of argument. Because there wasn't much else he could do. We had fingerprints that put him in the car. So all he could really do was say, I wasn't in on this somehow. So that was, I think, an expected argument. But if not, intent was at issue anyway, just because accountability was at issue. So it's always an issue we have to prove. So if the Court does not agree with that argument, that intent is at issue because of the accountability. So your opponent says that your argument or your theory reverses the analysis, which is that other crimes evidence is an exception. You know, the general rule is that other crimes evidence does not come in. And that if it comes in, it comes in on the basis of an exception. And under your theory, other crimes evidence would always come in. That's wrong. We're not under a common law rule. There's no rule of evidence that says evidence is inadmissible because it shows you committed other crimes. The rule we're looking at here is 404, which just says other crimes are not admissible to prove character to show action and conformity. In other words, propensity. So we couldn't say, he did these other things. Therefore, he's a bad guy. Therefore, he probably did the charged offenses. But that's, you know, that's not, we weren't relying on propensity inference here. And the evidence was relevant for other reasons to show the continuing scheme, design, narrative, intent, accountability, all those things. Well, I guess let me put it this way. In light of SMART, in the wake of SMART, when intent is at issue, even if the defendant has not disputed it, the state can always offer this other crimes evidence to show intent, as you said. And my question is, you know, where does that end? At what point does that, at what point can you not offer it? Same as with any other evidence. If it's relevant and it's not inadmissible for some other reason, it can come in. And here it was, you know, it wasn't inadmissible for any other reason. And we weren't relying on propensity inference. It is presumed inadmissible because it always shows propensity. This guy did this crime. That shows this guy's a bad guy. And so I think, you know, I think Justice Taylor's concern is a very valid one. If you can almost always say, well, he did this crime, so therefore he intended to do that crime, that really starts sounding an awful lot like propensity. Where is the lie? Okay. And I didn't mean to say other crimes evidence is always relevant. But here it is because it shows a continuing crime spree of the same type of offenses, which tends to suggest he was involved in the first one, which means he's on the hook for the murders. So, of course, you know, an unrelated crime might not be admissible. But in a crime spree type situation with the same offenders and the same instrumentalities and a 24-hour period, the same type of offense, it's going to be. And I would note, too, you know, it's very unlikely that the jury drew the prohibited propensity inference here. They were instructed not to consider it for propensity purposes, and we presume they didn't. The uncharged offenses, which was the robbery and the carjacking, were far less serious than the charged offenses of murder and attempted murder. So there's no concern that the jury, you know, wanted to punish him for the uncharged contact, so they found him guilty. And that's not on robbery or jacks, and there's no possible propensity inference because he didn't even commit that robbery. He just stayed in the car. What about the same question I asked your opposing counsel? For example, one of the things you suggested is motive, and I think that's one of the things the jury was instructed on. And honestly, I think that's pretty far-fetched. But what if the jury is instructed on a possible admissibility theory that we totally disagree with? Does that matter at all? That's okay. As long as there's one good theory, it's okay. That's it. And I would just add that – Do you happen to know what that case is? I don't. I'm sorry. The evidence of – the other reason that's harmless, you know, it's unlikely the jury drew the propensity inference, but also the evidence of defendant's guilt was strong. Clavitt's testimony about the offense was totally uncontradicted. He said both the robbery and the murders were defendant's idea. The defendant gave orders to other crew members during the offense, and that testimony was clearly enough to show he was an accomplice, and it was corroborated by Rhonda's testimony. And so for all those reasons, it would – If you were given the strength of this evidence, why did you put it in the VSI? That was the only evidence – closing time evidence of the only surviving victim, and that's always relevant. You know, the fact that he happened to be 4 years old, it was a fact of the offense. Defendant can't escape that he's responsible for the shooting of a 4-year-old. Unfair prejudice is when evidence leads the fact finder to decide guilt on some ground that's different from proof specific to the offense. The account of the surviving victim close in time to the offense is proof specific to the offense. It's just bad for the defendant, but he can't escape that. He can't, you know, try to convince the jury that the victim wasn't 4 years old. Before you get too far into the VSI, which I think we're probably going to pivot to soon, I had asked counsel about the continuing narrative or continuing course of conduct non-propensity basis for other crimes evidence. And I pointed out that there was a statement about finding another stang and a way to make money, and then they robbed a TV. You know, they take the big screen TV from Cornell's apartment. They rob a man, they carjack a car, and they sell the radio, and we know they sell the wheels, generate cash. And I asked counsel, why is that not sufficient under course of conduct or continuing narrative? And she said that it was too general because all robberies are intended to take the stolen good and turn it into cash. And so I'd like to hear your response. That's true about all robberies, but this was, you know, very specific. The same crew, the same car, the same gun, the same 8-mile radius, the same 24-hour period. This was a continuing crime spree, common criminal design, whatever we want to call it. It helped show that the defendant was involved in that first armed robbery, which was very similar to the other two theft-type offenses. Just briefly about the VSI. I think counsel argued that NAIDS statements weren't relevant because he was wrong about the number of offenders. That's not right. The number of offenders is relevant. Whether he's right or wrong about it, it's still relevant. I think counsel also argued that this VSI had to be necessary. And that's not the standard. We don't have to show that, you know, it's not inadmissible just because it's theoretically possible for us to convict without it. This evidence was relevant. He talked about the race and gender of the offenders, some details about their appearance. They had a gun. They shot him and his family. The shooter chased him as he ran and hid in his bed. He showed the interviewer scars from his gunshot wounds. He talked about what happened after the shooting, and he mentioned the television, which was the motive for the robbery. So all of those facts were relevant. The time, content, and circumstances factors were also met here. There was a slight delay in the interview, but we know that was not a problem because the interview shows Nate was able to recall the details despite the delay. The circumstances were not problematic because, you know, unlike in some cases, this entire interview was recorded. We know everything that happened. There were no leading questions. And, of course, we also know that the content of the interview, the basic content, was true because we know from other evidence that some men did enter Nate's apartment and shoot everyone there. So it's very different from a case where it's an unrecorded interview or this is the only evidence that the offense occurred. So it was certainly sufficient circumstances of reliability here. And then, again, any error in admitting that would have been harmless for the most part. The interview was corroborative of other evidence that came in other ways. And then, again, the overall evidence of the defendant's guilt was strong. Oh, Justice Taylor, your question about the TV, there was another TV in the car. There is another TV? Yeah, that was one of the things they tried to sell. So it's on page 18 of our brief. Unless the court has further questions, I'd ask the court to affirm in judgment. I just have a few points to make. In terms of the continuing common design crime spree, Your Honor referenced a Supreme Court case that said that it isn't even other crimes evidence. I think you might be referring to pipes. I am. I think that pipes actually supports our position in this case because it's a good example of how this is not a common criminal design case. Pipes was the scooter shooting incident case, right? So they found that that wasn't other crimes evidence, but it was relevant because it was intertwined with gang evidence. Here there's no evidence introduced by the state that this was a gang spree of any sort. All the common criminal design cases on which the state relies or that I could find are all relating to a specific group of people going forward to do a specific thing and then it just kind of snares all of the criminal conduct associated with that thing. So, for example, the illegal sale of drugs. The defendant in CERDA was the enforcer for this group that was bent on the illegal sale of drugs. So everything that he did in that group was admissible for the common criminal designer scheme. Again, joining a convoy for the express purpose of avenging a friend, that was a common criminal design that would encompass all of the acts associated with that. Here there is no evidence that the state presented to show that these defendants were in this group bent on the specific purpose of going out and robbing people for money other than just randomly, haphazardly deciding to commit various crimes after the only planned crime. Well, you say that the other two crimes weren't planned and perhaps they weren't planned in the sense that, oh, we're going to go to a gas station and find a Chevy and a car jacket, but couldn't the jury reasonably infer that there was a plan of committing more crimes and it was just a matter of finding the opportunity? Well, again, not without relying on propensity. Again, there's no evidence to show that they, you know, if the state had presented evidence that this group of men was known for stealing things and fencing them on Facebook Marketplace, that might connect these crimes. But here there's nothing. There's just haphazard crimes not connected to one another other than a propensity inference. Going to the point about how this was Lloyd's whole idea to commit the armed robbery, just wanted to point out that comes in through Crockett's testimony and this also ties into the state's argument that any error would be harmless. The evidence against Mr. Lloyd was basically through Crockett and Rhonda's testimony and they were both accomplices that had great benefit in deflecting blame and pointing a more inculpatory finger at other people. Crockett admitted on the stand that he didn't like Lloyd. His whole family didn't like Lloyd. And it's not to be ignored that the other participants, Fahim Norwood and Crockett, were half-brothers. Their third brother, Ron Ron, was also in and out of the interactions here. He was with Fahim when everybody else was arrested and Ron Ron and Fahim got away and didn't get arrested. So there's plenty of reasons to find that the state's evidence wasn't overwhelming in this case when the only evidence against Lloyd were these unreliable witnesses. That goes to harmless error or what you say would be no harmless error. Yes, but also it goes to the question of whether the only direct evidence that it was Lloyd's idea was from Crockett. Right. So, counsel, could you then address, you know, if the evidence was not overwhelming, then wouldn't that bolster the state's argument that the VSI was necessary? No, because the VSI is not, it doesn't add anything to the state's case. It doesn't provide any reliable or relevant information. But it corroborated some of the other evidence that was presented. I can't think of anything that it corroborates. And going to the state's argument that the VSI doesn't need to be necessary, I take issue with that because the VSI, don't forget, the VSI is hearsay. And hearsay is not to be admitted at trial unless it falls under an exception. And so the default is not that a VSI comes in. The default is that it doesn't come in unless an exception applies. And in this case, because the content of the video didn't, doesn't really add anything. It just actually muddies things and the state said, well, it could be at trial. They said, well, it was subject to cross-examination. You could say that about all hearsay statements. And also pointing out the inconsistencies in cross-examination will only show how more unreliable it is. But your argument, you say that it was not relevant. And then you say it's not reliable. I mean, it's certainly relevant because he's a victim, as the state points out. I mean, he was young at the time, of course, four years old, I believe. But he conveys in an interview, you know, details about the offender's appearance, race, gender, clothing, footwear. He describes that they had a gun. They shot and killed his family members. They shot him multiple times. He relayed that the offenders entered through the kitchen door, pursued him. You know, and he hid under a blanket, that they were able to see his feet. I mean, he talked about the TV. I don't see how it's not relevant. Your argument really is it's not reliable. I think it's both. How is it not relevant? The question is whether it makes any facts in controversy any more or less likely, less probable. There's no evidence about what the offenders wore, and it doesn't matter. There's no evidence about how they entered. There are certain things that he's saying in the video that really don't matter to the material issues here. And the other things that he did testify to, everything else is duplicative in the VSI. I mean, he did get on the stand and he said three people broke in. He did testify that he ran through the hallway. He did testify about where they came in and that they took the TV. So nothing else in this VSI really illuminated any fact in controversy. Can I just ask a quick question? Since he did testify, is there any confrontation clause issue with the VSI, or is it simply a statutory and whether the statute was met and whether it should have been admitted in terms of reliability? I believe that because it came in under 115-10, I didn't raise a confrontation clause issue. It's a statutory application. So the state indicated that the purpose of all robberies is to generally to sell the good and offense the good for money. It acknowledges that point. And so maybe it's too sweeping, too general. But it does point out that it's the same group of people, the same gun, the same car, and the same general geographic reason. Is that not enough for this continuing course conduct? No, I don't think it is. I would use the analogy that the state used in closing arguments. They called it team Fahim. Team what? Team Fahim. Fahim was the alleged shooter. They said that everything that this team did together, they analogized it to a basketball team. So I would like to use the analogy and say, okay, the same group of men play on the Bulls court a game. Everything that they do in connection with that game is relevant and admissible. If they then hours later go to a park and play a pickup game of three-on-three, how does that show anything relating to the Bulls game? Or, you know, they play in a league the following day. It just shows that these men play basketball together, which is exactly what propensity evidence is. Well, what they're saying is the first half is relevant to the second half of the game. But they're all separate games. It's not even part of the championship series. And to follow up, having played basketball with friends growing up, I knew how they played. I knew where they were going to be during the game. I know one person likes to run the baseline. I know another person has a good outside shot. And so, I mean, there may be some relevance there. Well, none of the state's witnesses testified to any kind of proclivities that these other offenders had during their particular crimes. So for those reasons, we ask that this court reverse Daryl Lloyd's conviction and remand for a new trial. Thank you both for an excellent briefing and argument in this case. We will take it under advisement. And I think we are adjourned for the moment.